UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TELAMON CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| THE CHARTER OAK FIRE ) | Case No. 1:13-cv-00382-RLY-DML |
| INSURANCE COMPANY and ) | |
| TRAVELERS CASUALTY AND ) | |
| SURETY COMPANY OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

### Order on Motion for Protective Order

This matter is before the court on a motion by non-party Paul Chamberlain International ("Chamberlain") for a protective order prohibiting discovery by the defendants of its investigative file. (Dkt. 90).

### Background

In April 2011 plaintiff Telamon Corporation conducted a study of its inventory turnover and on June 8, 2011, sent an employee to its Dayton, New Jersey warehouse to investigate, question employees, and inspect the inventory there. The employee discovered that substantial inventory was indeed missing, and he found the explanations offered by various workers suspicious. Telamon contacted its lawyers at Barnes & Thornburg about hiring seasoned fraud investigators, and five days after the employee's visit to the warehouse, on June 13, 2011, Barnes & Thornburg entered into a Consulting Agreement with Chamberlain

to investigate the inventory loss, which Telamon suspected was the result of intracompany illegal activity involving a worker named J.B.

Chamberlain's investigation led it to conclude that J.B. had stolen the subject inventory. Based at least in part on Chamberlain's investigation, Telamon made the insurance claims to defendants Charter Oak and Travelers that are the subject of this litigation, in which Telamon contends that the insurance companies wrongfully denied coverage and acted in bad faith in doing so. Telamon's proof of claim under the Travelers policy is dated July 1, 2011, and asserts that Telamon suffered a loss of nearly $2 million. In August or September 2011, Telamon made an insurance claim to Charter Oak that it had suffered a loss exceeding $2 million. At some later point before January 2012, Telamon determined that its loss from the inventory theft is about $5 million.

Barnes & Thornburg and Telamon reported Chamberlain's conclusions to the FBI via (1) a Probable Cause Letter sent by Barnes & Thornburg on September 21, 2011, and (2) a PowerPoint presentation on November 10, 2011, that was created by Chamberlain.

Chamberlain argues that its investigative work for Telamon and its counsel are protected from disclosure as the work product of a non-testifying, consulting expert prepared in anticipation of litigation. It also claims that the contents of its investigative file fall within the attorney-client privilege. On these bases, Chamberlain objects to producing the following documents requested in discovery:

> A complete copy of [Chamberlain's] entire file, including but not limited to, all correspondence, memoranda, emails, notes, interviews,

> audio or video recordings, photographs (moving and still), summaries, reports or any other documentation in your possession pertaining to your investigation for Barnes & Thornburg, LLP and Telamon in 2011—your report reference "2011-039FY."

(Charter Oaks' subpoena for documents to Chamberlain). Chamberlain has supplied to the defendants only (a) the PowerPoint presentation that was shared with the FBI, (b) its Consulting Agreement with Barnes & Thornburg, and (c) one report dated August 15, 2011, summarizing the results of its preliminary investigation of the circumstances surrounding the inventory loss.

The defendants counter that Chamberlain's investigative file materials are not protected work product because they were not prepared primarily because of litigation. They also argue that even if some or all of the materials were work product, that protection was waived by the selective disclosure by Telamon of the August 15, 2011 Chamberlain report, which it provided to the insurers to support Telamon's insurance claims. The defendants also challenge Chamberlain's invocation of an attorney-client privilege.

The court will first address the work product objection to disclosure, and then the issues surrounding the attorney-client privilege.

## Work Product

Chamberlain's ability to withhold documents based on the work product doctrine is a question of federal law. *E.g., Flomo v. Bridgestone Americas Holding, Inc.,* 2010 WL 2484266 at *1 (S.D. Ind. June 14, 2010). The work product doctrine protects from disclosure (1) documents or tangible things (2) prepared in "anticipation of litigation" or for trial (3) by or for a party or its representatives.

3

Fed. R. Civ. P. 26(b)(3). Chamberlain's description of itself as Telamon's or Barnes & Thornburg's consulting expert and invocation of Rule 26(b)(4)(D) as a further basis for withholding its file similarly requires proof of an "anticipation of litigation" element.

The party seeking to withhold documents has the burden of proving that they qualify for protection under the strictures of the federal rules. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996). The burden requires proving that the documents were prepared "'*because* of the prospect of litigation,'" or because "'some articulable claim, *likely* to lead to litigation,' had arisen." *Binks Mfg. Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1120 (7th Cir. 1983) (quoting *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir. 1977), and *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 865 (D.C. Cir. 1980)) (emphasis in original). Documents created for reasons other than litigation do not satisfy the element of having been prepared in anticipation of litigation and are not work product. *Binks,* 709 F.2d at 1118. Sometimes a document is prepared for dual purposes; in that case, *if* the "'primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible future litigation,'" then it may be withheld as work product. *Id.* (quoting *Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D.D.C. 1982)).

Chamberlain has not shown that the documents it created or gathered as part of the investigation for Telamon and its lawyers are work product. Chamberlain cannot even identify any particular litigation, the prospect of which

4

was a motivating reason for its hiring or its work. Chamberlain does not contend that its hiring or the conduct of its investigation was because of likely insurance coverage litigation. Instead, it points to the FBI's involvement and to J.B.'s filing of a charge of discrimination with the EEOC as satisfying the "anticipation of litigation" element. But neither of these circumstances tends to show that Barnes & Thornburg or Telamon hired Chamberlain, or that Chamberlain conducted its investigation, *because* "'some articulable claim, *likely* to lead to litigation,'" had arisen. *See Sandra T.E. v. South Berwyn School Dist. 100,* 600 F.3d 612, 622 (7th Cir. 2010) (quoting *Binks,* 709 F.2d at 1120) (Work product protection extends only to documents prepared because "some articulable claim, likely to lead to litigation, has arisen.")

J.B. filed her EEOC charge of discrimination on December 8, 2011—many, many months after Chamberlain was hired. Chamberlain provides no basis for a conclusion that Telamon or its lawyers hired Chamberlain or that Chamberlain performed its work because of any belief that J.B. was likely to accuse Telamon of employment discrimination, or that litigation by J.B. was feared, or that litigation by Telamon against J.B. was at all contemplated.

The fact that Telamon's counsel and Chamberlain provided information from Chamberlain's investigation to the FBI does not tend to establish that the primary motivating purpose for Chamberlain's work was the prospect of litigation, for at least two reasons. One, Chamberlain does not counter the fact that it was the *results* of its investigation that led Chamberlain and the lawyers to reach out to the

5

FBI; Chamberlain's hiring and its work were not primarily for the purpose of assisting the FBI in gathering evidence for potential criminal proceedings. Second, any contemplated criminal proceedings involved J.B. and perhaps other rogue employees as the suspects and potential defendants, with Telamon always as victim. The anticipated litigation for which an entity or its representative may create documents protectable as work product must be litigation to which one expects to be a party, and there is no indication that anyone feared Telamon might be targeted as a potential defendant in any criminal proceeding. *See Sandra T.E.,* 600 F.3d at 618 (emphasis added) ("The work-product doctrine protects documents prepared by attorneys in anticipation of litigation *for the purpose of analyzing and preparing a client's case*").

  The connection between Chamberlain's hiring and investigation to any potential litigation is even more tenuous than that considered by the Seventh Circuit in *Binks,* which the court found did not meet the "anticipation of litigation" requirement for work product protection. Industrial equipment Binks Manufacturing had sold to Presto Industries malfunctioned, and Binks and Presto began threatening one another in sharply worded letters that nevertheless always fell "short of stating [an intention] to institute litigation." *Binks,* 709 F.2d at 1120. Later, Presto's lawyers conducted an investigation, including interviews, about which the lawyers prepared memoranda. Binks sought to discover the memoranda prepared by the lawyers in the course of that investigation, and Presto objected that the documents were work product. The district court disagreed and the Seventh

6

Circuit affirmed the decision. The Seventh Circuit acknowledged that the threats exchanged by the parties that had prompted the lawyers' investigation hinted at a "prospect of litigation," but that prospect was "remote," and not "likely," as the work product doctrine requires. *Id.* at 1120.

The fact that Barnes & Thornburg—rather than Telamon itself—hired Chamberlain does not tip the scale to satisfy the anticipation of litigation requirement. Chamberlain relies heavily in its opening and reply briefs on the same case for the proposition that "the involvement of attorneys in the direction and creation of the document is often, but not always, conclusive on the question of litigation related purpose." *ABN Amro Mortgage Grp., Inc. v. Promised Land Mortgage, LLC,* 2007 WL 101812 at *2 (S.D. Ind. Jan. 8, 2007). As *Binks* itself shows, attorney involvement does not settle the issue; the focus must be on whether some articulable claim likely to result in litigation was the primary motivation. *See also Sandra T.E.,* 600 F.3d at 622 (investigation conducted by counsel was "not merely in anticipation of likely litigation but in response to the actual filing of this lawsuit"); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 977 (7th Cir. 1996) (documents protected by work product "were written after Logan's claim had been processed, investigated, and denied, and after Logan had already filed suit for benefits"); *Hartford Fire Ins. Co. v. Pure Air on the Lake L.P.,* 154 F.R.D. 202, 207 n.8 (N.D. Ind. 1993) (investigative report of accident prepared by insured after accident site had been "swarmed with lawyers, adjusters, engineers, work crews, and others," and insurance company refused to participate in a joint investigation

with the insured was work product and had been prepared when "litigation was inevitable, probably imminent").

Chamberlain has not met its burden to show that it was hired, or that it conducted its work, because of any particular matter that Telamon or its lawyers thought likely to lead to litigation involving Telamon. Instead, the evidence demonstrates that Chamberlain was hired, and prepared and gathered the documents in its investigative file, because Telamon had a strong business need to determine how hundreds of thousands of dollars of inventory went missing and which of its employees was responsible, wholly apart from the prospect of any litigation.

The court therefore concludes that no part of Chamberlain's investigative file materials may be withheld from disclosure under the work product protections of Rules 26(b)(3)(A) and 26(b)(4)(D).

## Attorney-Client Privilege

Chamberlain also contends that all of its file materials can be withheld as attorney-client privileged communications. The court rejects Chamberlain's invocation of the attorney-client privilege on a number of grounds. First, Chamberlain's argument is perfunctory and conclusory. Chamberlain cites the Seventh Circuit's description of the elements of the attorney-client privilege but does not try to show how any particular documents are privileged communications. Instead, it contends that *all* documents are privileged and invites the court to "see from its *in camera* examination" that the communications and documents at issue

are in fact protected by the attorney client privilege." (Dkt. 97 at p. 10). The court's *in camera* examination reveals that nearly all of Chamberlain's file materials could not be classified as privileged attorney-client communications because they are public records or Telamon's business records. The gathering of public and business records by an investigator, or the funneling of business documents through one's attorney's office (or through one's fraud investigator), does not make those documents privileged. *See., e.g., Lockhart v. ExamOne World Wide, Inc.,* 2012 WL 243688 at *2 (S.D. Ind. Jan. 25, 2012) (information gathering by non-attorney did not constitute attorney-client privileged communication); *Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach,* 1993 WL 179789 at *7 (N.D. Ill. 1993) (attorney-client privilege would only protect documents exchanged between client and lawyer "whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice"); *Colton v. United States,* 306 F.2d 633, 639 (2nd Cir. 1962) (person cannot prevent disclosure of documents by "simple expedient of keeping them in the possession of his attorney").

Second, some of the communications obviously were not made to obtain legal advice, were not maintained in confidence, or were not even intended as a confidential communication in the first place. For example, the communications include (a) an email chain sent by the lawyers to Chamberlain lauding its reputation as a fraud investigator; (b) emails to set up meetings; and (c) emails that do not involve counsel at all or any bona fide connection to legal advice. Third, documents within Chamberlain's file reveal that Chamberlain's investigatory work

9

was not inextricable from Barnes & Thornburg's provision of legal advice and that its work was conducted because Telamon had a pressing business reason to uncover what it believed was large-scale inventory fraud by one of its workers. Documents indicate that the use of Barnes & Thornburg as the nominee client to Chamberlain was for the purpose of attempting to shield Chamberlain's work as privileged. It is apparent, however, that Barnes & Thornburg did not in fact direct this investigation, but that Chamberlain designed the investigation and determined the records to gather and review, the persons to interview, the questions to be asked, and the manner of interrogation.

In short, Chamberlain's conclusory arguments regarding the application of the attorney-client privilege fail to establish that the documents in Chamberlain's investigative file fall within the attorney-client privilege. *See United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991) (rejecting as insufficient a blanket assertion of attorney-client privilege). The court is not inclined to engage in its own detailed document-by-document analysis when Chamberlain chose an "all in" strategy in asserting the privilege.[1]

---

[1] Moreover, waiver principles would prevent the assertion of the privilege as to the majority of the Chamberlain investigative file. Telamon provided to the insurers a preliminary investigative report prepared by Chamberlain that it otherwise asserts was a privileged communication. That report summarizes "key" interviews and documents. When the privilege is waived as to an attorney-client communication, the waiver extends to all communications on the same subject matter. *Rockies Express Pipeline, LLC v. 58.6 Acres,* 2009 WL 5219025 at *6 (S.D. Ind. 2009). "'The waiver extends beyond the document initially produced out of concerns for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.'" *Id.* (quoting *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir.

## Conclusion

Chamberlain has not demonstrated that the contents of its investigative file are protected from disclosure under Rules 26(b)(3)(A) or 26(b)(4)(D) or as privileged attorney-client communications. Its motion for protective order (Dkt. 90) is therefore DENIED.

So ORDERED.

Date: 01/17/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

---

2005)). The subject matter of the preliminary report is the investigative work conducted by Chamberlain. By producing the preliminary report (apparently for the purpose of proving its insurance claim and the losses suffered), Telamon waived the privilege with respect to the documents in the investigative file that are the "nuts and bolts" source documents of Chamberlain's work, including the interview summaries, document analyses, and investigative background summaries.

The insurers contend that waiver principles also apply because Telamon named Paul Chamberlain in its initial disclosures as a person with knowledge of information relevant to its claims. The court does not agree, at least at this point. Telamon has not named Mr. Chamberlain, or any other person who participated in Chamberlain's investigative work, as a testifying expert, or even a fact witness. If Mr. Chamberlain or someone else who participated in the investigation were to be used as a fact witness or testifying expert, that could be another reason for compelling the disclosure of the knowledge base comprising the Chamberlain investigation.