UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TELAMON CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:13-cv-00382-RLY-DML |
| ) | |
| THE CHARTER OAK FIRE ) | |
| INSURANCE COMPANY and ) | |
| TRAVELERS CASUALTY AND ) | |
| SURETY COMPANY OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(c)**

Telamon Corporation suffered a loss of over five million dollars resulting from the theft of Telamon's property and inventory by its Vice-President of Major Accounts, Juanita Berry. Telamon sought coverage under two insurance policies: (1) a commercial property policy issued by Charter Oak Fire Insurance Company, and (2) a Wrap+® Crime Policy issued by Travelers Casualty and Surety Company of America ("Travelers C&S"). After conducting investigations into the loss, both Charter Oak and Travelers C&S denied coverage. This lawsuit for breach of contract and bad faith denial of insurance coverage followed.

On December 10, 2015, the court granted the Charter Oak's and Travelers C&S' Motions for Summary Judgment, finding the policies at issue did not cover Telamon's loss. On January 5, 2016, Defendants filed a Motion to Dismiss Pursuant to Federal Rule

1

of Civil Procedure 12(c) on Telamon's remaining claims for bad faith based on: (1) an "unfounded denial of coverage" and (2) an "unfounded delay and exhaustive and expensive claims investigation." Rule 12(c) provides for judgment on the pleadings; consequently, the court will refer to the motion as such. Having read and reviewed the parties' written submissions and the applicable law, the court finds Defendants' motion must be **GRANTED**.

I.     **Standard of Review**

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The pleadings include the complaint, answer, and any written instrument attached as exhibits, such as a contract. Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

A motion for judgment on the pleadings "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers nothing more than naked assertions, "labels and conclusions," or a recitation of the elements of a cause of action is insufficient to meet Rule 8's pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

For purposes of ruling on Defendants' motion, the court accepts Telamon's well-pleaded factual allegations as true and construes all reasonable inferences in its favor. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015).

## II. Pertinent Bad Faith Allegations

The following allegations comprise Telamon's bad faith claims:

- Following notice of loss to both Defendants, Charter Oak and Travelers C&S embarked upon exhaustive, expensive and expansive 'claims investigations' for more than one year which included numerous examinations under oath, Travelers' retention of an allegedly independent outside audit firm, and repeated demands from Travelers for production of voluminous documents.

- Travelers[1] immediately took an adversarial position with respect to its insured from the very beginning of the 'claims investigations' process, retaining outside counsel to conduct much of Travelers' 'investigations.'

- Telamon was required not only to manage the theft/fraud investigation but also to respond to Travelers' burdensome and capricious 'claims investigations.'

- The grounds set forth by Travelers for denying coverage under the Wrap+® Crime Policy are unfounded, groundless, and made in bad faith in an effort to delay and deny making payment under the policy.

- Travelers' denial of coverage under the Charter Oak Policy conflicts directly with its denial of coverage under the Travelers [Wrap+® Crime] Policy. In so doing, Travelers is making an unfounded refusal to pay policy proceeds by taking inconsistent positions with its insured.

- Travelers' unfounded denial of coverage under the Charter Oak Policy constitutes a breach of the duty to exercise good faith and fair dealing with respect to its insured Telamon. In addition, the unfounded delay and exhaustive and expensive 'claims investigations' resulted in additional damages to Telamon as a proximate result of Charter Oak's bad faith.

---

[1] Charter Oak and Travelers C&S are both subsidiaries of Travelers. (Compl. ¶¶ 2, 3). In the Complaint, Telamon refers to them collectively as "Travelers."

3

- Travelers' unfounded denial of coverage under the [Wrap+® Crime] Policy constitutes a breach of the duty to exercise good faith and fair dealing with respect to its insured Telamon.

(Filing No. 1, Compl. ¶¶ 22, 24, 25, 26, 27, 30, 32, 33, 42, 45) (emphasis in original).

## III. Discussion

The court will first address Telamon's challenge to Defendants' motion as untimely.

### A. Timeliness of Defendants' Motion

Telamon argues Defendants' motion should be stricken because it was filed past the deadline to file dispositive motions under the parties' Case Management Plan ("CMP"). Section IV.B. of the CMP set April 7, 2014, as the dispositive motion deadline, with the proviso by Defendants that modification of the deadlines would be warranted because they intended to file a motion to bifurcate and stay Telamon's bad faith claims from the breach of contract claims on the coverage issues. The parties agreed these issues could be decided on summary judgment. (Filing No. 38, ¶ IV.B.). The court granted the Defendants' subsequent motions to bifurcate and stay Telamon's bad faith claims until the breach of contract claims were determined on summary judgment. (Filing No. 74). The court extended the summary judgment deadline on two occasions, eventually setting a briefing schedule for summary judgment motions to be filed by August 31, 2015, on the breach of contract claims only. (Filing Nos. 114, 138, 190, 195). Defendants' motion for judgment on the pleadings was filed on January 5, 2016—less than a month after the court ruled on the parties' summary judgment motions

on the breach of contract claims. The court therefore finds that Defendants' motion is timely. The court now turns to the merits of Defendants' Rule 12(c) motion.

### B. Merits of Defendants' Motion

Implied in all insurance contracts is the duty of an insurer to deal with its insured in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind. 1993). In *Hickman*, the Indiana Supreme Court recognized, for the first time, a cause of action against an insurer for the tortious breach of that duty. The Court noted that a cause of action for breach does not arise every time an insurance claim is denied. *Id*. at 520. "For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id.* Instead, an insurer breaches its duty if it "denies liability knowing that there is no rational, principled basis for doing so." *Id*.; *see also Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) ("To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability."). "Poor judgment or negligence do not amount to bad faith; the additional element of wrongdoing must also be present." *Colley v. Indiana Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guaranty Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (quoting *Colley*, 691 N.E.2d at 1261). With that standard in mind, the court now turns to Telamon's bad faith claims.

5

### 1. Wrongful Denial of Coverage

Telamon's first claim—that Defendants wrongfully denied coverage—cannot survive dismissal. As noted above, Telamon must raise an inference that Defendants' knew that there was no legitimate basis for denying coverage. *Freidline*, 774 N.E.2d at 40. But here, even Telamon acknowledges that the court's finding that the policies do not provide Telamon coverage for its theft loss means "that the denial of coverage was not unfounded." (Filing No. 257 at 3). Accordingly, Telamon's bad faith claim based on the "unfounded denial of coverage" must be dismissed.

### 2. Manner of Claims Handling

Telamon's bad faith claim based on Defendants' "unfounded delay and exhaustive and expensive claims investigations" merits more discussion. Defendants argue a bad faith claim premised on the manner in which Defendants conducted their claims investigation is not recognized by the Indiana Supreme Court as a viable basis for a bad faith claim. According to Defendants, the court is constrained in its analysis by the contractual duties set forth in *Hickman* and reaffirmed in *Magwerks*.

As noted above, *Hickman* first recognized a cause of action for the tort of breach of the duty of good faith and fair dealing. 622 N.E.2d at 519. While it declined to determine the "precise extent of that duty," it observed that an insurer's contractual obligation includes the obligation to refrain from:

> (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

6

*Id*. at 519.

Twelve years later, in *Magwerks*, *supra*., the Indiana Supreme Court reaffirmed "that a good faith dispute over insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured." *Id.* at 976. But the Court found the insured did not base its bad faith claim on a dispute over coverage; instead, the insured based its bad faith claim on the insurer's "manner of handling the claim." *Id.* at 976-77. Because neither party provided the Indiana Supreme Court with guidance on whether the duty to deal in good faith also encompassed the manner in which a claim is handled, it declined to expand the insurer's obligations beyond the four stated in *Hickman*. *Id*.

The Court then analyzed the insured's bad faith claim under the four *Hickman* obligations. The evidence before the jury reflected that the insurer acknowledged, before it denied the insured's claim, that the insured's roof had "collapsed" under the terms of the policy. *Id.* The Court therefore found that there was evidence to support the jury's conclusion that the insurer's asserted denial of coverage based on its understanding of the meaning of the term "collapse" was a manufactured excuse. *Id*. Accordingly, the Court concluded that "a jury could reasonably have reached the conclusion that [the insurer's] conduct amounted to "'an unfounded refusal to pay policy proceeds.'" *Id.* at 977 (quoting *Hickman*, 622 N.E.2d at 519).

Telamon cites *Magwerks* as supporting the proposition that, in appropriate cases, an insured may bring a bad faith claim based upon the manner in which the insurer handled the claim. To support its argument, Telamon relies on two cases from the

7

Indiana Court of Appeals. In *HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, the court stated in a footnote:

> [A]n insurer may breach the covenant of good faith and fair dealing in ways other than a wrongful denial of coverage; hence, an insurer may exhibit bad faith in, for example, its handling of the claim such that even if it engages in a good faith dispute over coverage it may still breach the convenant of good faith and fair dealing. *Magwerks*, 829 N.E.2d at 976-77.

831 N.E.2d 259, 264 n. 2. This footnote is not persuasive for several reasons. First, it is dicta, and second, the statement is contrary to the holding in *Magwerks*. Consequently, *HemoCleanse* carries no weight.

The second case Telamon relies on is *Klepper v. Ace Am. Ins. Co.*, 999 N.E.2d 86 (Ind. Ct. App. 2013). This case involved a class of property owners who sued the owner of a distillery, Pernod Ricard USA, LLC, for mold damage caused by the ethanol released during the distillation process. *Id.* at 88. Pernod tendered the claim to its insurance carriers, XL Insurance America and ACE American Insurance Company. During the claims process, ACE mistakenly classified the claim as an underage drinking claim and closed the file. *Id.* ACE later learned of its mistake, and agreed to tender a defense to Pernod with XL. The parties then sought mediation. *Id.* at 89. The Class, Pernod and XL reached a settlement agreement and bound ACE even though ACE had left before the mediation was over. The case then centered on whether the Class's claims were covered under the ACE policy and whether ACE was liable for bad faith. *Id.* A special master concluded that ACE honored its obligations under the policy, but that Pernod had not. *Id.* The trial court adopted his findings and entered a partial final judgment under Rule 54(b).

The Indiana Court of Appeals affirmed the trial court's ruling of no coverage under the ACE policy, but held that the Class's bad faith claim remained. *Id*. at 98. The court acknowledged that plaintiffs asserted a claim for bad faith claims handling, citing *HemoCleanse, supra.*, but did not opine on the validity or invalidity of such a claim. *Id.* Instead, it noted that the *Magwerks* Court declined to expand the extent of an insurer's duty beyond what was expressed in *Hickman*. And in a footnote, the court found the plaintiffs' argument suffered from the same defect as the plaintiff's argument in *Magwerks*: "Likewise, on appeal, the Class has not developed an argument for expanding the scope of an insurer's duty to deal in good faith beyond that described in *Hickman* and argues only that outstanding discovery that [sic] was never completed." *Id*. at 98 n.11. The *Klepper* Court's takeaway from *Magwerks* was not that the manner of claims handling is a basis for a bad faith claim, but that "a good faith dispute concerning insurance coverage does not automatically preclude a punitive damages claim for bad faith when coverage is denied." *Id*. at 98 (quoting *Magwerks*, 829 N.E.2d at 978). In other words, "an insurer's duty to deal in good faith with its insured encompasses more than a bad faith coverage claim.

Because this is a diversity case, the court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2002). As explained above, neither the Indiana Supreme Court nor the Indiana Court of Appeals has recognized a claim for bad faith claims handling. *See also Dennerline v. Pronational Ins. Co.*, No. 1:05-cv-LJM-WTL, 2006 WL 1344059, at * 2 (S.D. Ind. May 16, 2006)

9

("Contrary to [insureds'] assertion, the Court was not confused about the Indiana Supreme Court's decision [in *Magwerks*]. The Indiana Supreme Court has not recognized bad faith handling of a claim or expanded the obligations that it set forth in *Hickman*."). Thus, in accordance with *Magwerks*, the court will analyze Telamon's claim under the four obligations articulated in *Hickman*.

Telamon's allegations essentially amount to a complaint over the breadth and length of Defendants' investigation regarding whether Berry's theft was covered under Telamon's commercial property policy with Charter Oak, or Telamon's Wrap+® Crime Policy with Travelers. But the court has found, as a matter of law, that Defendants' decision to deny coverage was right; Telamon did not have coverage under either policy. Therefore, Defendants did not "mak[e] an unfounded refusal to pay policy proceeds," "caus[e] an unfounded delay in making payment," "deceiv[e] Telamon," or "exercis[e] any unfair advantage to pressure Telamon into a settlement of [its] claim." *See Hickman*, 622 N.E.2d at 519.

Futhermore, as Defendants posit, Telamon did not allege Defendants acted with a "state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Magwerks*, 829 N.E.2d at 977. Telamon argues that Indiana bad faith law does not have an "ill will" requirement. To the contrary, a claim of bad faith includes "the additional element of conscious wrongdoing." *Colley*, 691 N.E.2d at 1261; *see also Magwerks*, 829 N.E.2d at 977 ("A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." (quoting *Colley*, 691 N.E.2d at 1261)); *Auto-Owners Ins. Co. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 805-

06 (Ind. Ct. App. 2013) ("[P]roving bad faith amounts to showing more than bad judgment or negligence: "it implies the conscious doing of wrong because of dishonest purpose or moral obliquity . . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will.") (quoting *Oxendine v. Public Serv. Co.*, 423 N.E.2d 612, 620 (Ind. Ct. App. 1980))); *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind. Ct. App. 2007), *trans. denied* ("A bad faith determination inherently includes an element of culpability"). The court therefore finds that Telamon's bad faith claims must be dismissed as a matter of law.

### IV. Conclusion

Telamon's bad faith claims against the Defendants fail to state a claim in tort for breach of the duty of good faith and fair dealing. Accordingly, Defendants' Motion for Judgment on the Pleadings (styled as a Motion to Dismiss) (Filing No. 249) is **GRANTED**.

**SO ORDERED** this 11th day of April 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.